# Falkner *v.* Campbell Printing Press and Manufacturing Company.

### Bill in Equity for Foreclosure of Mortgage.

1. *Rents and profits, as between mortgagor and mortgagee.*—The mortgagor is entitled to the rents, income and profits of the mortgaged property, until the mortgagee asserts his right to them by taking possession, giving notice in the nature of a demand, or filing a bill for foreclosure,

[Falkner v. Campbell Printing Press and Manufacturing Co.]

and asking the appointment of a receiver; and where possession is taken, without objection on the part of the mortgagor, by the holder of a mortgage which is afterwards declared void at the instance of a second mortgagee, in a suit seeking an account and foreclosure, the rents accruing during his possession, from the filing of the bill, may be claimed and intercepted by the second mortgagee, at any time before they have been paid over to the mortgagor.

2. *Costs; when payable out of fund in court.*—The taxation of costs is a matter of discretion, and they may properly be taxed and made payable, in a foreclosure suit, out of any moneys in the custody of the court, belonging to any of the parties litigant, and subject to the lien of the mortgage.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 17th August, 1878, by the Campbell Printing Press and Manufacturing Company, a corporation chartered under the laws of New York, against J. M. Falkner and others; and sought the foreclosure of a mortgage which said Falkner had executed to the complainant, an account, and the marshalling of securities as between the complainant and the several defendants who claimed liens on the mortgaged property. The complainant's mortgage, which was made an exhibit to the bill, was dated the 1st May, 1877, and filed for record on the 21st May; was given to secure the payment of said Falkner's note for $1,697.52, of even date with the mortgage, and payable six months after date; and conveyed certain personal property, which was thus described: " *The Southern Plantation* printing establishment, situated at Nos. 5 and 7 Perry street, Montgomery, Alabama, including printing presses, type, cases, stands, and all the material thereto belonging." R. H. Molton, as the administrator of the estate of Kate A. Glover, deceased, W. L. Chambers, and the partners comprising the firm of Moses Brothers, were joined with Falkner as defendants to the bill, under an allegation that each claimed some interest in the property conveyed by the mortgage, or some lien upon it; and it was alleged, also, that said Chambers and Moses Brothers had each taken possession of some portions of the property; that their respective liens were subsequent and subordinate to the complainant's mortgage, of which they had notice; or, if not subordinate and inferior, that each embraced other property, in addition to that conveyed by the complainant's mortgage, to which they should first resort, and for which they should be required to account. The bill prayed, on these allegations, that the complainant's mortgage be declared a first lien on the property; that the property be sold, and the mortgage foreclosed; that Chambers and Moses Brothers each be required to account for the property which they had taken; that an account be taken of the mortgage debt; that the priority of the respective liens be declared, if

the complainant's was not first, and the securities marshalled; and for general relief.

Moses Brothers filed an answer to the bill, and also a cross-bill in the nature of an original bill, asserting the priority of their mortgage, and asking a foreclosure thereof. Their mortgage was dated 14th September, 1876, and duly filed for record on the 24th October; was given to secure the payment of said Falkner's promissory note for $875, of even date with the mortgage, and payable on the 14th November, 1876; and conveyed two city lots in Montgomery, together with "all the property, of every kind and description, in the *Southern Plantation* office, on Perry street in the city of Montgomery." They also held a second mortgage, dated the 18th September, 1877, and given to secure the payment of the same note; which conveyed the same personal property, and, in addition, other printing materials, consisting of type, cases, &c., which had been used in printing papers called *The Hornet* and *The Bulletin*, and were afterwards transferred to the office of the *Southern Plantation*. This cross-bill was filed on the 17th March, 1879; and Falkner, Chambers, Molton as administrator, and the complainant in the original bill were made defendants to it.

As between Moses Brothers and the complainant in the original bill, the principal matter of contest was as to the priority of their liens on a printing-press, which the complainant had sold to Falkner, the agreed price being the consideration of the complainant's mortgage and secured note, and which was embraced also in the mortgage to Moses Brothers; but, as the case is here presented, this matter is immaterial. The mortgage to Molton was dated the 8th February, 1875, and conveyed only the city lots in Montgomery: its validity and priority were admitted by Moses Brothers in their cross-bill, and no question in reference to it is raised by the record. The mortgage to Chambers was dated 1st January, 1876, and conveyed all the real and personal property embraced in the other mortgages; but its validity was assailed by Moses Brothers in their cross-bill, and by Molton in his answer to a cross-bill filed by Chambers; and on appeal to this court, at a former term, by Chambers, his mortgage was held void.—*Chambers v. Falkner*, 65 Ala. 448.

The original bill prayed for an account and decree against Chambers, "for the value of such of said property as he may be found to have disposed of, or otherwise converted to his own use;" and the cross-bill of Moses Brothers prayed, "that said Chambers be held to account for the value of the personal property received or converted by him, and for the rental value of said real estate since he has been in possession thereof." In his answers to the original bill and to the cross-bill of Moses Brothers, and also in a cross-bill filed by himself, Chambers ad-

mitted that he had taken possession, under his mortgage, of the type and printing materials conveyed by his mortgage, and had sold them, with the consent of Falkner, for $375; and he also admitted that he had taken possession of the real estate after the law-day of his mortgage. The printing-press was sold, by agreement of the parties to the suit, for $900, the purchaser's notes being deposited with the register to await the result of the suit; and the chancellor (Hon. H. AUSTILL) held that the complainant in the original bill was entitled to priority over Moses Brothers, in this fund. He further held that Chambers "should be required to account for the proceeds of the personal property sold by him, and for the rents of the real property realized since the filing of the cross-bill of Moses Brothers;" and ordered the necessary accounts to be stated by the register.

The register stated the accounts as ordered, and reported that the amount due the original complainant, with interest to 28th April, 1881, was $1,541.26; to Moses Brothers, $1,039.39; and to Molton, $901.16. He reported, also, that the personal property sold by Chambers was worth on the 1st June, 1878, when sold by him, $375; that the rents received by him after the filing of the cross-bill of Moses Brothers, after deducting the cost of necessary repairs, was $287.96; and that the personal property which went into the possession of Moses Brothers was worth $470. No exceptions were filed to the report, and it was confirmed by the chancellor at the August term, 1881; when he also rendered a decree, ordering the real estate to be sold, the proceeds to be first applied to the payment of Molton's debt, and the balance, if any, to Moses Brothers; also, ordering the proceeds of sale of the printing press, when collected, to be paid over to the Campbell Printing Press Company, in satisfaction, *pro tanto*, of the decree in their favor; requiring Chambers to pay into court, within twenty days, the $375 and $287.96, which he had received, as above stated; ordering the $375 to be paid over to the Campbell Printing Press Company, and the $287.96 to Moses Brothers, as credits on their respective debts. In October, 1881, on motion of complainant, a reference to the register was ordered, to ascertain and report the rents received by Chambers subsequent to the former report; and the sum of $438.88 being reported, by agreement of parties, as the full amount of rents for which Chambers was responsible, that sum was paid into court by him, and he was discharged. At the same time, a petition was filed by Falkner, asking a modification of the decree, and an order that the rents received from Chambers should be paid over to him. The chancellor overruled this petition, and ordered that this fund,

"after deducting and paying out of the same all the costs of this cause," be paid over to Moses Brothers.

The appeal is sued out by Falkner, who here assigns as error the dismissal of his petition, the decree ordering the rents paid in by Chambers to be paid over to Moses Brothers, and the decree for the payment of the costs out of that fund. There was a joinder in error by the complainant in the original bill, but none of the other parties appeared.

R. M. WILLIAMSON, and GEO. F. MOORE, for appellant.

E. J. FITZPATRICK, contra.

SOMERVILLE, J.—The contest in the present case is between the mortgagor and mortgagee, for certain rents of the mortgaged property, which had been paid into the hands of the register by order of the Chancery Court. These rents accrued after the filing of the cross-bill by the mortgagees, Moses Brothers, in reference to the priority of whose mortgage there is no dispute as between them, and as against the other unsatisfied mortgages. The special prayer of the cross-bill was for a condemnation of these rents, then in the hands of one of the defendants, Chambers, who had entered upon the premises, and collected the rents, under a claim of right in himself. The claim of Chambers was based on a mortgage executed by the appellant, Falkner, the validity of which had been successfully contested, and which had been declared void on appeal to this court, in the case of *Chambers v. Falkner*, 65 Ala. 448. This collection being without authority, and Chambers being one of the defendants in the suit, the chancellor made an order for him to pay the money into court, which was accordingly done. It was finally decreed, that a portion of fund should be appropriated to the payment of the costs of suit, and that the balance be paid to Moses Brothers, on their mortgage debt. This action of the court is assigned for error.

The principle is too well settled in this State, either for controversy or discussion, that the mortgagor is the owner of the mortgaged premises, as against all the world except the mortgagee. He is therefore entitled to the rents, incomes and profits of the mortgaged property, so long as the mortgagee fails to disturb his possession or right by the interposition of a legal claim to them. This claim may be made, as is well settled, by filing a bill for foreclosure, accompanied with the appointment of a receiver, by taking possession, or by otherwise giving notice in the nature of a demand.—*Johnston & Stewart v. Riddle*, 70 Ala. 219; *Scott v. Ware*, 65 Ala. 174. It may be admitted, as stated in *Scott v. Ware, supra*, that the mere

[Lanier v. Russell.]

filing of a bill of foreclosure will not alone interrupt the right of the mortgagor to take the rents. The mortgagee must be active in the assertion of his claim, either through his own exertions, or the intervention of the court in his behalf.—*Gilman v. Telegraph Co.*, 91 U. S. 603.

The mortgagor Falkner's possession had been here disturbed, by the entry on the premises of one of the defendants, Chambers. This entry was made under power conferred in a mortgage, the validity of which the mortgagor did not at the time dispute, and which he does not assail in this suit. It may be that Chambers was a trespasser, by reason of his mortgage being void; but he was not acting for Falkner, and, therefore, cannot be deemed in law to be his agent. His possession of the disputed fund can not then be said to be that of Falkner. He must rather be considered as holding for the party entitled. The payment of this fund into court was ordered at the instance of the mortgagees, and on their motion. The demand for it by the register was, in effect, the demand of the mortgagees. Their application in this behalf, made to the court pursuant to the prayer of their cross-bill, may be considered as tantamount to a demand through the aid of judicial intervention.—*Thomas v. Brigstocke*, 4 Russell, 64 (4 Eng. Ch. 64). This demand was made before the funds reached the mortgagor's hands, and while the whole matter of litigation was *in gremio legis*. The mortgage lien of Moses Brothers thus attached before any right to the rents legally became vested in the appellant. In this view of the case, we can see no error in the action of the chancellor touching the fund in question. The taxation of costs was a matter of discretion, and they could be properly taxed and made payable out of any moneys in the custody of the court, which belonged to any of the parties litigant, and subject to the lien of the mortgages sought to be foreclosed.

Affirmed.